**BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: PowerSchool Holdings, Inc. and PowerSchool Group, LLC Customer Data Security Breach Litigation | MDL No. 3149 |

**RESPONSE IN OPPOSITION TO MOTION TO TRANSFER AND CONSOLIDATE FOR COORDINATED PRETRIAL PROCEEDINGS UNDER 28 U.S.C. § 1407 OF PLAINTIFFS J.B. AND M.B., MINORS, BY AND THROUGH THEIR LEGAL GUARDIAN PATRICK BOWLER**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..... ii

I. INTRODUCTION ..... 1

II. LEGAL STANDARD ..... 2

III. ARGUMENT ..... 2

A. The Actions are Well-Suited for Transfer and Consolidation ..... 2

1. The Actions Involve Common Questions of Fact ..... 2

2. Transfer and Consolidation of the Actions Promote Convenience and Efficiency ..... 3

B. The Actions Should be Transferred to the Eastern District of New York ..... 3

1. Three Factors Clearly Favor the Eastern District of New York ..... 4

2. Two Factors are Neutral ..... 5

3. Only One Factor Weighs Against the Eastern District of New York ..... 5

IV. ALTERNATIVELY, THE NORTHEN DISTRICT OF CALIFORNIA IS WELL-SUITED FOR TRANSFER ..... 6

V. CONCLUSION ..... 7

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 23andMe, Inc., Customer Data Security Breach Litigation*, MDL No. 3098 ....... 7

*In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, 196 F. Supp. 2d 1375 (J.P.M.L. 2002) ....... 3, 4

*In re Facebook, Inc., Consumer Privacy User Profile Litigation*, MDL No. 2843 ....... 7

*In re Juul Labs, Inc., Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2913 ....... 7

*In re Oxycontin Antitrust Litigation,* 314 F. Supp. 2d 1388 (J.P.M.L. 2004) ....... 3

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litigation,* MDL No. 1720 ....... 5

*In re Perry Johnson & Associates. Medical Transcription Data Securities Breach Litigation* 717 F. Supp. 3d 1357 (J.P.M.L. 2024) ....... 5, 6

*In re Resource Exploration Inc. Securities Litigation*, 483 F. Supp. 817 (J.P.M.L. 1980) ....... 3

*In re Roundup Products Liability Litigation*, MDL No. 2741 ....... 7

**Statutes**

28 U.S.C. § 1407 ....... 1, 2

Plaintiffs J.B. and M.B., minors, by and through their legal guardian Patrick Bowler (collectively, "Plaintiffs"), respectfully respond to the Motion to Transfer and Consolidate for Coordinated Pretrial Proceedings to the Western District of Missouri Pursuant to 28 § U.S.C. 1407 for Consolidated Pretrial Proceedings (the "Motion"). *See* ECF No. 2. Plaintiffs support transfer and consolidation of the actions (*see* Schedule of Actions, the "Actions," ECF No. 52 at 8-9), but respectfully submit that the Eastern District of New York is the most appropriate and convenient Transferee district for this multidistrict litigation for the reasons stated herein, or, in the alternative, the Northern District of California, as opposed to the Western District of Missouri.

## I. INTRODUCTION

On or about January 7, 2025, PowerSchool Group, LLC's and PowerSchool Holdings, Inc.'s (collectively "PowerSchool") made public statements acknowledging that PowerSchool was the subject of a data breach. PowerSchool announced, for the first time, that its Student Information System was breached resulting in third parties' unauthorized access to PowerSchool users' data, including Plaintiffs' highly sensitive medical, educational, and personally identifiable information ("PII") including their name, contact information, date of birth, certain medical information, Social Security Number, and other related information.

In the weeks following PowerSchool's announcement of the data breach, Plaintiffs, by and through counsel undersigned, filed a class action lawsuit in the Eastern District of New York (*J.B., et al. v. PowerSchool Holdings, Inc.*, No. 2:25-cv-00327). As stated in the Motion, thirty-two (32) Actions have been filed against Defendants PowerSchool Group, LLC's, PowerSchool Holdings, Inc.'s, and Bain Capital, L.C. (collectively, "Defendants"), nationwide.

The Actions concern substantially similar parties, arise from the same set of facts, and assert similar causes of action. Specifically, plaintiffs in all cases assert nearly identical claims against Defendants including negligence, negligence per se, breach of implied contract, invasion

of privacy, and state consumer protection act violations in connection with largely similar allegations. The Actions generally allege that plaintiffs entrusted Defendants with their confidential records and highly sensitive PII in order to receive education and related services. Plaintiffs made the decision to entrust their PII with Defendants, based, in part, on Defendants' repeated representations that they were taking steps to safeguard data because they understood the risks of data breaches and identity theft. However, Defendants failed to secure and safeguard plaintiffs' highly sensitive PII in accordance with their representations.

Because of the Actions' overlapping claims and allegations, Plaintiffs support the transfer and consolidation of the Actions. For the reasons stated below, the most appropriate venue and jurisdiction is the Eastern District of New York, or, in the alternative, the Northern District of California.

## II. LEGAL STANDARD

Transfer and consolidation are proper if actions pending in different federal district courts share "one or more common questions of fact[,]" provided that doing so would "be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a).

## III. ARGUMENT

### A. The Actions are Well-Suited for Transfer and Consolidation

#### 1. The Actions Involve Common Questions of Fact

Under the legal standard, transfer and consolidation are proper where the Actions share common questions of fact. *Id.* The Actions unquestionably satisfy that requirement. Each action involves overlapping allegations that Defendants failed to safeguard the sensitive PII of students and teachers who were PowerSchool users. The claims are also overlapping, involving common law and state consumer protection act claims. Additionally, the Actions are based on nearly

identical legal theories. The putative class allegations significantly overlap and define a purported nationwide class that suffered the same injuries from the same underlying circumstances.

Because the Actions involve similar allegations, legal theories, and claims, discovery will be nearly identical and will involve nearly identical documents and witnesses. If transferred, the judge overseeing the Actions would have the authority to "formulate a pretrial program that ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties." *In re Oxycontin Antitrust Litig*., 314 F. Supp. 2d 1388, 1390 (J.P.M.L. 2004).

**2. Transfer and Consolidation of the Actions Promote Convenience and Efficiency**

Centralization of the Actions will promote judicial interests of convenience and efficiency by avoiding duplicative discovery and preventing inconsistent pretrial rulings. Discovery inefficiencies will be eliminated by "ensure[ing] that the actions are supervised by a single judge who, from day-to-day contact with all aspects of the litigation, will be in the best position to design a pretrial program that will prevent duplicative discovery . . . and substantially conserve the time and efforts of the parties, the witnesses and the federal judiciary." *In re Res. Expl. Inc. Sec. Litig*., 483 F. Supp. 817, 821 (J.P.M.L. 1980). Centralization also greatly decreases the likelihood of inconsistent rulings on pretrial issues. *See In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 196 F. Supp. 2d 1375, 1376 (J.P.M.L. 2002) (granting transfer in part to prevent inconsistent pretrial rulings, particularly concerning questions of class certification).

**B. The Actions Should be Transferred to the Eastern District of New York**

The Eastern District of New York is the most appropriate transferee district for the Actions. To determine the proper transferee district, the Panel considers several, non-dispositive factors, including: (i) where the largest number of cases are pending; (ii) where discovery has occurred or

most likely will occur; (iii) where cases have progressed furthest; (iv) the site of the occurrence of common facts; (v) where the costs and inconvenience will be minimized; and (vi) the experience, skill, and caseload of available judges. Manual for Complex Litigation (Fourth) § 20.131 (2004) (citing Robert A. Cahn, *A Look at the Judicial Panel on Multidistrict Litigation*, 72 F.R.D. 211, 214-15 (1977)), § 22.33 (discussing centralization).

**1. Three Factors Clearly Favor the Eastern District of New York**

**First**, a significant portion of the common facts occurred in the New York metropolitan area. While Defendants have not yet completed their investigation or notice process, the largest number of impacted students and teachers likely reside in or close to New York. Indeed, at least four (4) New York City public schools—part of the largest school district in the United States (with over 800,000 enrollees)—confirmed that their PowerSchool systems were impacted by the breach.[1] Adding to the number of likely impacted people residing in the Eastern District are the many students and teachers residing on Long Island. According to recent reports, at least ten (10) Long Island Schools districts and several more private schools confirmed that they were impacted by the PowerSchool breach.[2]

**Second**, costs and inconvenience will be minimized by the Eastern District of New York. As stated in Plaintiffs' complaint, at least fifty (50) million students across the United States have been impacted by the breach of PowerSchool's system. For a case of this size to proceed

[1] Cayla Bamberger, *NYC Schools Trying to Identify Students Affected by PowerSchool Breach*, GovTech (Feb. 7, 2025), https://www.govtech.com/education/k-12/nyc-schools-trying-to-identify-students-affected-by-powerschool-breach; Enrollment *[] for the 120 largest school districts, by enrollment size in 2021: School year 2019-20 and fiscal year 2022*, U.S. Department of Education, National Center for Education Statistics (May 2023), available at https://nces.ed.gov/programs/digest/d22/tables/dt22_215.30.asp.

[2] Logan Crawford, *At least 10 Long Island school districts impacted by PowerSchool data breach*, NEWSDAY (Jan. 14, 2025), https://longisland.news12.com/at-least-9-long-island-school-districts-impacted-by-powerschool-data-breach.

efficiently, all parties must have feasible access to the chosen venue. New York residents would certainly have easy access to the Eastern District of New York as would a substantial number of individuals from other, nearby impacted school districts, including New Jersey, Pennsylvania, Connecticut, and Massachusetts. Moreover, the Eastern District of New York courts are conveniently located near three (3) major airports and other transportation hubs which will further promote convenience for the parties and their attorneys.

**Third**, the Eastern District of New York has significant experience with multidistrict litigation and has the availability and resources to manage this potentially large multidistrict litigation. The Eastern District of New York has fifteen (15) Article III Judges and only three (3) multidistrict litigations, one of which is already settled—*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, MDL No. 1720. Importantly, the Eastern District of New York has a fairly low number of pending non-MDL civil cases per judgeship, which means that it has the bandwidth to handle this multidistrict litigation efficiently. Thus, the Eastern District of New York is well-suited to handle this litigation.

**2. Two Factors are Neutral**

Two of the potential factors the Panel typically considers for most appropriate venue are neutral here. Discovery has not begun in any case. Indeed, all cases remain at the pleading stage. Therefore, the Panel must turn to the other factors to make a determination.

**3. Only One Factor Weighs Against the Eastern District of New York**

The only factor potentially weighing against the transfer and consolidation to the Eastern District of New York for the purposes of this multidistrict litigation is the number of related actions filed in other federal district courts. While, as of the Motion, twenty-nine (29) of the thirty-two (32) cases were filed in the Eastern District of California, this factor is not determinative. *See In re Perry Johnson & Assocs. Med. Transcription Data Sec. Breach Litig.* 717 F. Supp. 3d 1357,

1360 (J.P.M.L. 2024) (finding "the Eastern District of New York is the appropriate transferee district" even though 18 cases were filed in Nevada where Perry Johnson was allegedly located). These Actions are no different. PowerSchool's location near the Eastern District of California courts should not be the sole dispositive factor in determining where these Actions should be transferred and consolidated. The Panel should consider the locus of the breach and the district likely to have the greatest number of breached individuals as it did in *Perry Johnson*, especially because many of the impacted individuals here will be minors and their parents, who, if required to travel, would be burdened with having to travel across the country to monitor their claims.

The sole basis for requesting transfer to the Western District of Missouri is its purported "central location" and "experience managing multidistrict litigation." However, the Panel must consider the potential costs and convenience of the litigants and key witnesses. *See* Section III(B)(1). PowerSchool is headquartered in California, Bain Capital, L.P. is headquartered in Massachusetts, and the likely highest percentage of affected individuals is in New York. The convenience of the Defendants cannot be allowed to outweigh the needs of the impacted individuals, the majority of whom likely reside either in the State of New York or in the surrounding states and would find it difficult to pursue their claims across the country in the Western District of Missouri.

## IV. ALTERNATIVELY, THE NORTHEN DISTRICT OF CALIFORNIA IS WELL-SUITED FOR TRANSFER

While Plaintiffs respectfully submit that the Eastern District of New York is the appropriate Transferee district for the Actions, Plaintiffs respectfully assert that the Northern District of California is a well-suited alternative venue and jurisdiction. For reasons similar to those outlined above, the Northern District of California provides a suitable location that satisfies the six factors, *supra* Section III(B). The Northern District of California contains some of the largest school

districts in the country, making it a convenient, central location for the thousands of impacted teachers and students who likely reside in the district or in the surrounding states. The Northern District of California courts are conveniently located near three (3) major airports, in addition to other transportation hubs providing a more suitable location for a litigation such as this where impacted parties reside across the United States.

The Northern District of California also has significant experience with multidistrict litigation and has availability for these actions. The Northern District of California has twenty-three (23) Article III Judges and fourteen (14) multidistrict litigations, five (5) of which have already settled—*In re 23andMe, Inc.*, *Customer Data Security Breach Litigation*, MDL No. 3098; *In re McKinsey & Co., Inc. National Prescription Opiate Consultant Litigation,* MDL No. 2996; *In re Juul Labs,* Inc*., Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2913; *In re Facebook, Inc., Consumer Privacy User Profile Litigation*, MDL No. 2843; and *In re Roundup Products Liability Litigation,* MDL No. 2741. Importantly, the Northern District of California has a fairly low number of pending non-MDL civil cases per judgeship, which means that it has the bandwidth to handle this case efficiently. Moreover, as stated above, no discovery has occurred, nor have any cases made it past the pleading stage, so no other court has a stronger procedural claim to the case.

## V. CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Panel enter an Order centralizing the Actions in the Eastern District of New York for coordinated or consolidated

pretrial proceedings, or, in the alternative, centralizing the Actions in the Northern District of California.

Date: February 20, 2025

By: */s/ Michael P. Canty*
**LABATON KELLER SUCHAROW LLP**
Michael P. Canty
Carol C. Villegas
Danielle Izzo
Gloria J. Medina
Michael Hotz
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
mcanty@labaton.com
cvillegas@labaton.com
dizzo@labaton.com
gmedina@labaton.com
mhotz@labaton.com

*Attorneys for Plaintiffs J.B and J.M.*