BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| In Re: PowerSchool Holdings, Inc., and PowerSchool Group, LLC Customer Data Security Breach Litigation | MDL DOCKET NO. 3149 |

**RESPONSE OF DEFENDANTS POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP LLC TO MOTION FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407 FOR CONSOLIDATED OR COORDINATED PRETRIAL PROCEEDINGS**

Defendants PowerSchool Holdings, Inc., and PowerSchool Group LLC (together, "PowerSchool" or the "Company"),[1] respectfully submit this brief in response to the Motion to Transfer and Consolidate for Coordinated Pretrial Proceedings under 28 U.S.C. § 1407 filed by Plaintiff J.I., A.J., and O.S., by and through her next friend M.S. (together, "Moving Plaintiffs"). PowerSchool respectfully requests that the Moving Plaintiffs' motion be granted but that this matter be centralized in the Eastern District of California or the Northern District of California, not the Western District of Missouri.

I.  **INTRODUCTION**

PowerSchool is a leading provider of cloud-based software for K-12 education in the United States, providing educational technology products to schools and school districts. On December 28, 2024, PowerSchool discovered that it had experienced a cybersecurity incident involving the PowerSchool Student Information System (the "Cybersecurity Incident" or the "Incident"). Upon learning that it had been the victim of a cyberattack, PowerSchool immediately engaged its cybersecurity response protocols and mobilized the appropriate resources, including third-party cybersecurity experts, to conduct a forensic investigation of the scope of the Incident.

---

[1] Bain Capital, LP is named as an additional defendant in a single underlying action, *Flick et al. v. PowerSchool et al.*, No. 2:25-cv-00232, in the Eastern District of California, and hereby joins PowerSchool's response.

PowerSchool quickly alerted its customer schools and school districts. The Company has supported those customers, as well as individuals with data involved in the Incident, including by committing to make available complimentary identity and credit monitoring to involved individuals.

Starting on January 8, 2025, multiple putative class action lawsuits relating to the Cybersecurity Incident have been filed against PowerSchool in federal district courts nationwide. One putative class action lawsuit has been brought against PowerSchool in San Diego Superior Court. As of the time of this filing on February 20, 2025, 52 class action lawsuits have been filed in federal courts against PowerSchool, alleging various claims arising from the Cybersecurity Incident (the "Actions"). Forty of the 52 Actions have been filed in the Eastern District of California, where PowerSchool is headquartered. Four actions were filed in the Northern District of California (the "Northern District Actions"), one action was filed in the Eastern District of New York (the "New York Action"), one action was filed in the Middle District of North Carolina (the "North Carolina Action"), one action was filed in the Northern District of Illinois (the "Illinois Action"), one action was filed in the District of Minnesota (the "Minnesota Action"), and four actions were filed in the Western District of Missouri (the "Missouri Actions"). All of the complaints include various claims asserted on behalf of a putative nationwide class. Certain actions, in addition, allege a statewide subclass.[2]

---

[2] *See Faircloth et. al v. PowerSchool Holdings, Inc., et. al*, No. 2:25-cv-00252 (E.D. Cal. Jan. 17, 2025) (North Carolina subclass); *Flick et. al v. PowerSchool Holdings, Inc.*, No. 2:25-cv-00232 (E.D. Cal. Jan. 16, 2025) (California subclass); *Keighley et. al v. PowerSchool Holdings, Inc.*, No. 2:25-cv-00210 (E.D. Cal. Jan. 15, 2025) (Florida subclass); *J.I. et. al, v. PowerSchool,* No. 2:25-cv-04006 (W.D. Mo. Jan. 14, 2025) (Missouri subclass); *Krustinger et al. v. PowerSchool Holdings, Inc., et al.*, No. 4:25-cv-00057 (W.D. Mo. Jan. 28, 2025) (Missouri subclass); *Hisserich et al. v. PowerSchool Holdings, Inc.*, No. 2:25-cv-00444 (E.D. Cal. Feb. 3, 2025) (Missouri subclass); *Spicuzza, et al. v. PowerSchool Holdings, Inc. et al.*, No. 3:25-cv-01353 (N.D. Cal. Feb. 7, 2025) (California subclass); *Behar Calzado et al. v. PowerSchool Holdings, Inc., et al.*, No. 2:25-cv-00498 (E.D. Cal. Feb. 11, 2025) (Massachusetts subclass, New York subclass); *Campbell et al. v. PowerSchool Holdings, Inc., et al.*, No. 1:25-cv-01549 (N.D. Ill. Feb. 13, 2025) (Illinois subclass); *Valdovinos et al. v. PowerSchool Holdings, Inc., et al.*, No. 3:25-cv-01783 (N.D. Cal. Feb. 19, 2025) (California subclass); *Garcia et al. v. PowerSchool Holdings, Inc., et al.*, No. 4:25-cv-01803 (N.D. Cal. Feb.

All of the 52 Actions are brought by plaintiffs who claim their information (or, in the case of parents, those of their children) was involved in the Incident. The Actions all assert the same types of claims based upon common factual allegations relating to the Cybersecurity Incident. Specifically, each of the Actions alleges that (1) PowerSchool suffered the Incident; (2) unauthorized persons allegedly exfiltrated personally identifiable information ("PII") of the plaintiffs and putative class members; (3) PowerSchool purportedly failed to maintain adequate security protocols; and (4) PowerSchool alerted its customers on January 7, 2025. The Actions all allege that PowerSchool was negligent in the handling of plaintiffs' data and/or failed to comply with certain statutory requirements related to that data.

PowerSchool anticipates that additional actions are likely to be filed soon and for some period of time into the future. No substantive rulings have been made in the Actions and PowerSchool has yet to respond to any of the individual complaints, as the relevant plaintiffs have agreed to defer the Company's response date pending the resolution of the MDL motion. As addressed further below, the Actions are clearly appropriate for coordinated pretrial proceedings and should be centralized in either the Eastern District of California or the Northern District of California.

## II. ARGUMENT

### A. Transfer to One District Court for Consolidation and Coordination Is Appropriate Under 28 U.S.C. § 1407

When "civil actions involving one or more common questions of fact are pending in different districts" and transfer will serve "the convenience of parties and witnesses" and "promote the just and efficient conduct of such actions," any party may request that this Panel designate a

---

20, 2025) (California subclass); *W. et al. v. PowerSchool Holdings, Inc., et al.*, No. 4:25-cv-00120 (W.D. Mo. Feb. 20, 2025) (Missouri subclass); *I. et al. v. PowerSchool Holdings, Inc., et al.*, No. 4:25-cv-00122 (W.D. Mo. Feb. 20, 2025) (Missouri subclass).

centralized forum for consolidation. 28 U.S.C. § 1407(a). "Centralization [permits] all actions to proceed before a single transferee judge who can structure pretrial proceedings to consider all parties' legitimate discovery needs, while ensuring that common parties and witnesses are not subjected to duplicative discovery demands." *In re Katz Interactive Call Processing Patent Litig.*, 481 F. Supp. 2d 1353, 1355 (J.P.M.L. 2007). Transfer serves the objectives of avoiding conflicting rulings and schedules, eliminating duplication in discovery, reducing litigation cost, and conserving the time and effort of parties, attorneys, and courts. *See* Manual for Complex Litigation (Fourth), § 20.131, at 220.

Here, these considerations strongly favor transfer. The 52 Actions invoke the same allegations related to the Cybersecurity Incident, will involve duplicative discovery of PowerSchool witnesses and documents, and, if litigated separately, risk conflicting rulings and schedules. The Panel has repeatedly concluded that centralization is warranted in similar litigations centered around data security incidents, including those involving, as here, a service provider that is the victim of a cyberattack. *See, e.g.*, *In re AT&T Inc. Cellular Customer Data Sec. Breach Litig.*, No. MDL 3124, 2024 WL 4429233, at *3 (J.P.M.L. Oct. 4, 2024) (unpublished); *In re Evolve Bank & Tr. Customer Data Sec. Breach Litig.*, No. MDL 3127, 2024 WL 4429367 (J.P.M.L. Oct. 4, 2024) (unpublished); *In re Perry Johnson & Assocs. Med. Transcription Data Sec. Breach Litig.*, 717 F. Supp. 3d 1357 (J.P.M.L. 2024); *In re MOVEit Customer Data Sec. Breach Litig.*, 699 F. Supp. 3d 1402 (J.P.M.L. 2023); *In re KeyBank Customer Data Sec. Breach Litig.*, 655 F. Supp. 3d 1372 (J.P.M.L. 2023); *In re Blackbaud, Inc., Customer Data Sec. Breach Litig.*, 509 F. Supp. 3d 1362, 1364 (J.P.M.L. 2020) (consolidating litigation against cloud software provider); *In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, 410 F. Supp. 3d 1350, 1354 (J.P.M.L. 2019) (consolidating litigation against

medical billing provider); *In re Home Depot, Inc., Customer Data Sec. Breach Litig.*, 65 F. Supp. 3d 1398 (J.P.M.L. 2014); *In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*, 802 F. Supp. 2d 1370 (J.P.M.L. 2011).

1. <u>Centralization Will Minimize the Risk of Inconsistent Rulings</u>

Under 28 U.S.C. § 1407, the risk of inconsistent rulings—especially in regard to class determinations—is a compelling factor in favor of transfer. *In re Lupron Mktg. & Sales Practices Litig.*, 180 F. Supp. 2d 1376, 1377-78 (J.P.M.L. 2001). "These actions—all of which are putative nationwide class actions—share factual issues relating to [the Cybersecurity Incident] in which an 'unauthorized external party' gained [] access to [PowerSchool's] network and acquired certain [] information of [PowerSchool's] customers." *In re KeyBank,* 655 F. Supp. 3d at 1373. All of the Actions involve disputed common and complex questions of law and fact, including: whether PowerSchool "failed to maintain adequate security measures," "how [PowerSchool's] system was breached," "what security measures [PowerSchool] had in place to protect against such a breach," "what information was compromised in the breach," and "whether [PowerSchool] provided timely notice of the breach" to its customers." *Id.* That "common factual core" shared by the Actions counsels in favor of consolidation. *In re Home Depot*, 65 F. Supp. 3d. at 1399 (explaining that the "shared factual questions arising from a data security breach" formed a "common factual core" supporting MDL proceedings, even where "certain claims or defenses are not identical").

Additionally, all of the Actions allege similar putative nationwide classes consisting of individuals whose data was allegedly compromised in the Cybersecurity Incident. Centralization therefore will prevent inconsistent pretrial rulings on these common issues of law and fact, including virtually all motions that are likely to be filed in the Actions, ranging from PowerSchool's motion to dismiss to plaintiffs' motions for class certification, as well as *Daubert* motions and any motion practice concerning discovery disputes.

      2.      <u>Centralization Will Promote the Just and Efficient Conduct of the Actions and Will Serve the Convenience of the Parties and Witnesses</u>

Centralizing the Actions also will serve "the convenience of the parties and the witnesses," 28 U.S.C. § 1407, by simplifying discovery, minimizing witness inconvenience, and reducing discovery expenses. *See In re NSA Telecomms. Records Litig.*, 444 F. Supp. 2d 1332, 1334 (J.P.M.L. 2006) (finding centralization warranted to "prevent inconsistent pretrial rulings" and to "conserve the resources of the parties, their counsel and the judiciary"). "[D]iscovery and motions concerning [PowerSchool's] data security practices, how the unauthorized access occurred, and the investigation into the breach will be substantially the same in all actions." *In re Am. Med. Collection Agency*, 410 F. Supp. 3d at 1353. In similar data breach class action litigation, the Panel has concluded that centralization offers "substantial opportunities to streamline pretrial proceedings, reduce duplicative discovery, and conserve the resources of the parties, their counsel, and the judiciary." *Id.*; *see also In re KeyBank*, 655 F. Supp. 3d 1372; *In re Evolve Bank*, 2024 WL 4429367.

The Actions have been filed in seven districts so far, and in district courts spread around the country—in California, Missouri, Illinois, Minnesota, New York, and North Carolina. Although the majority of the Actions have been filed in the Eastern District of California, additional actions arising from the Cybersecurity Incident continue to be filed in other districts. *In re Dept. of Veterans Affs. (VA) Data Theft Litig.*, 461 F. Supp. 2d 1367, 1369 (J.P.M.L. 2006) (centralizing three actions in three districts to ensure "that the common parties and witnesses are not subjected to discovery demands that duplicate activity that will or has occurred in other actions"); *see also In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 214 F. Supp. 3d 1357, 1358 (J.P.M.L. 2016) ("The number of cases and law firms involved [16 actions pending in three districts] suggests that informal coordination with respect to discovery and other pretrial

matters would not be practicable."); *In re Uber Techs., Inc., Data Sec. Breach Litig.*, 304 F. Supp. 3d 1351, 1354 (J.P.M.L. 2018) ("[T]he number of actions [17], districts [9], and involved counsel [14 groups of plaintiffs' counsel], and the complexity of the litigation, make effective coordination on an informal basis impracticable."); *In re Fortra File Transfer Software Data Sec. Breach Litig.*, 717 F. Supp. 3d 1378, 1379 (J.P.M.L. 2024) (finding centralization preferable to informal coordination for 46 actions pending in seven districts, with four additional related actions, despite previous informal coordination reducing fifty total actions down to 10). Centralization pursuant to 28 U.S.C. § 1407 will obviate the need for multiple district courts to decide transfer motions pursuant to 28 U.S.C. § 1404.

### B. The Eastern District and Northern District of California are the Most Appropriate Transferee Courts for Consolidated Proceedings

PowerSchool submits that centralization in one of the two district courts in which the Actions are pending in California—the Eastern District or the Northern District—is the most appropriate transferee forum. In determining the appropriate transferee court, the Panel has considered factors including: (i) location of the defendant's headquarters; (ii) location of the relevant witnesses and evidence; (iii) location of the currently-pending actions; (iv) capacity and willingness of the transferee court to manage the MDL; and (iv) conservation of the resources of the parties, their counsel, and the judiciary (including coordination with any parallel state proceedings). *In re Blackbaud, Inc., Customer Data Sec. Breach Litig.*, 509 F. Supp. 3d 1362 (J.P.M.L. 2020); *In re Baby Food Mktg., Sales Pracs. and Prods. Liab. Litig.*, 730 F. Supp. 3d. 1371 (J.P.M.L. 2024). Here, these factors strongly support consolidation in California, not the Western District of Missouri.

*First*, PowerSchool is headquartered in Folsom, California (in Sacramento County), which falls within the Eastern District of California and is proximate to the Northern District of

California, where three of the Actions are pending in San Francisco. Many of the relevant witnesses and evidence related to the Cybersecurity Incident are located in and around Sacramento, making centralization in the Eastern District of California or the nearby Northern District of California most appropriate. *See In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 363 F. Supp. 3d 1372, 1375 (J.P.M.L. 2019) (holding that the District of Maryland, where Marriott was headquartered and "relevant documents and witnesses thus likely will be found," was an appropriate transferee district); *In re Vonage Initial Public Offering (IPO) Sec. Litig.*, 471 F. Supp. 2d. 1354, 1356 (J.P.M.L. 2007) (holding that the District of New Jersey was an appropriate transferee forum where defendant was located in that district, and many of the relevant acts and transactions were alleged to have taken place there).

*Second*, all but eight of the 52 Actions were filed in California, underscoring California's status as the "center of gravity" for this litigation and supporting transfer to a district court in California. *In re Med. Informatics Eng'g, Inc., Customer Data Sec. Breach Litig.*, 148 F. Supp. 3d 1381, 1382 (J.P.M.L. 2015) (holding that district was "center of gravity" for data breach cases where it was the defendant headquarters and location for majority of actions); *see also In re Cal. Retail Natural Gas and Elec. Antitrust Litig.*, 150 F. Supp. 2d 1383, 1384 (J.P.M.L. 2001) (concluding that the "appropriate transferee forum for centralized pretrial proceedings is a district adjacent to California still within the same circuit, because of the potential recusal issues affecting the availability of a judge in any California district"). Contrary to what the Moving Plaintiffs appear to suggest, this is not an instance where the Actions are equally distributed around the country, such that a centrally located district court offers the litigants and their counsel some benefit from a convenience perspective. To the extent Moving Plaintiffs contend that the Eastern District of California is inconvenient for the few plaintiffs who have commenced actions in other

states (which, even taken together, make up a small minority of all parties), the Northern District of California is highly convenient for those traveling from outside California and significantly more convenient for PowerSchool's witnesses than the Western District of Missouri. Indeed, where, as here, "far more actions are pending" in one judicial district than in others, the Panel previously has found that to be strongly persuasive in identifying an appropriate transferee forum. *See, e.g.*, *In re Marriott Int'l*, 363 F. Supp. 3d at 1375; *see also, e.g.*, *In re Keybank*, 655 F. Supp. 3d. at 1374 (transferring to district where five out of ten pending actions were filed); *In re Vonage*, 471 F. Supp. 2d at 1355–56 (transferring to the district where all but one of the actions were filed).

*Third*, the Eastern District and the Northern District of California are both easily accessible to parties and witnesses. The key witnesses in this litigation are PowerSchool's employees, many of whom are located in the Sacramento area. *In re Evolve Bank*, 2024 WL 4429367, at *1 (district of defendant's main office and majority of plaintiffs' filings was "convenient and accessible forum"). Moreover, Sacramento and San Francisco are both accessible to out-of-state attorneys through major international airports. *In re Parmalat Sec. Litig.*, 350 F. Supp. 2d 1356, 1357 (J.P.M.L. 2004) (choosing the Southern District of New York as transferee district for the convenience of Italian witnesses located abroad).

*Fourth*, an action captioned *Jane Doe One et al. v. PowerSchool Holdings, Inc., et al.*, 25CU002797C, has been filed in the San Diego Superior Court. Centralization of the federal cases in California will facilitate easier coordination of discovery with this California state action, to the extent that case proceeds separate and apart from the federal Actions. *See In re Baby Food* 730 F. Supp. 3d. at 1372 ("[C]entralization in [N.D. Cal.] will facilitate coordination with the ongoing California state court baby food litigation").

The Moving Plaintiffs—three of the more than 100 plaintiffs who have filed the Actions—

disregard the above factors in requesting centralization in the Western District of Missouri. There are no distinct issues or evidence that favor transfer to Missouri.[3] No Plaintiff alleges any Missouri-specific events. The Moving Plaintiffs instead seek transfer to the Western District of Missouri mainly because they contend that the Eastern District of California is understaffed and has a backlog. But there are no MDLs currently pending in the Eastern District of California, suggesting that the district may have "the capacity to manage the MDL efficiently." *In re AT&T*, 2024 WL 4429233, at *3; *see also In re Lending Tree, LLC, Customer Data Sec. Breach Litig.*, 581 F. Supp. 2d 1367, 1368 (J.P.M.L. 2008).

Transfer to the Northern District of California would also be more appropriate than Missouri. To the extent that Moving Plaintiffs suggest that resource constraints in the Eastern District are relevant, the Northern District offers a well-equipped, highly experienced, central district proximate to relevant witnesses and evidence. *See In re First Nat. Bank, Heavener, Okl. Sec. Litig.*, 451 F. Supp. 995, 997 (J.P.M.L. 1978) (transferring to the Western District of Oklahoma from adjacent Eastern District for convenient access to major metropolitan resources of Oklahoma City to accommodate the resource constraints of Muskogee). Centralization in the Northern District of California would allow the Actions to proceed in a district court much closer to the Company's headquarters than Missouri and near where the overwhelming majority of the

---

[3] Although the Moving Plaintiffs have alleged a Missouri state subclass and brought claims under Missouri consumer protection statutes, the Actions pending in the Eastern and Northern Districts of California have alleged various state subclasses and likewise include consumer protection claims under the laws of certain states. *See Keigley, et al. v. PowerSchool Holdings, Inc. et al.*, No. 2:25-cv-00210 (E.D. Cal. Jan. 15, 2025); *Buack-Shelton, et al. v. PowerSchool Holdings, Inc.,* No. 2:25-cv-00093 (E.D. Cal. Jan. 8, 2024); *Faircloth et al. v. PowerSchool Holdings, Inc., et al.*, No. 2:25-cv-00252 (E.D. Cal. Jan. 21, 2025); *Vargha et al. v. PowerSchool Holdings, Inc.,* No. 2:25-cv-00110 (E.D. Cal. Jan. 9, 2025); *Flick et al. v. PowerSchool Holdings, LLC, et al.*, No. 2:25-cv-00232 (E.D. Cal. Jan. 22, 2025); *Spicuzza, et al. v. PowerSchool Holdings, Inc. et al.*, No. 3:25-cv-01353 (N.D. Cal. Feb. 7, 2025) (California subclass); *Behar Calzado et al. v. PowerSchool Holdings, Inc., et al.*, No. 2:25-cv-00498 (E.D. Cal. Feb. 11, 2025) (Massachusetts subclass, New York subclass); *Valdovinos et al. v. PowerSchool Holdings, Inc., et al.*, No. 3:25-cv-01783 (N.D. Cal. Feb. 19, 2025) (California subclass); *Garcia et al. v. PowerSchool Holdings, Inc., et al.*, No. 4:25-cv-01803 (N.D. Cal. Feb. 20, 2025) (California subclass). Indeed, Plaintiffs in one Eastern District of California action have alleged a Missouri subclass. *Hisserich et al. v. PowerSchool Holdings, Inc.*, No. 2:25-cv-00444 (E.D. Cal. Feb. 3, 2025).

Actions are already pending, thereby promoting the convenience of the parties and the witnesses. Importantly, the Northern District of California has substantial experience with MDL proceedings. It is a district court with many judges who have relevant, longstanding expertise presiding over MDLs, making it well-suited to managing a MDL proceeding like this.[4]  Both the Eastern District of California and the Northern District of California have experienced, seasoned judges well-equipped to handle this MDL proceeding, and the factors that the Panel weighs in determining an appropriate transferee district all strongly favor California, not Missouri as the Moving Plaintiffs contend.

### III. CONCLUSION

For all of the reasons set forth above, PowerSchool respectfully requests that the Moving Plaintiffs' motion should be granted as to consolidation but denied as to centralization in the Western District of Missouri.  PowerSchool respectfully requests that the Panel instead transfer these actions to the Eastern District of California or the Northern District of California for consolidation.

---

[4] In the Northern District of California, Judge William Orrick is currently overseeing the Action captioned *Spicuzza, et al. v. PowerSchool Holdings, Inc. et al.*, No. 3:25-cv-01353 (N.D. Cal. Feb. 7, 2025).  Judge Orrick—like many judges in the Northern District—has prior MDL experience and is currently presiding over the *In re: Juul Labs, Inc., Sales Pracs. and Prods. Liab. Litigation* multidistrict litigation, MDL No. 2913.

Dated:  February 20, 2025

Respectfully submitted,

/s/ *Anne Johnson Palmer*
Anne Johnson Palmer
ROPES & GRAY LLP
Three Embarcadero Center
San Francisco, CA 94111
Tel: (415) 315-6337
anne.johnsonpalmer@ropesgray.com

Monica Mleczko
ROPES & GRAY LLP
800 Boylston Street
Boston, MA 02199
Tel: (617) 235-4082
monica.mleczko@ropesgray.com

*Attorneys for Defendants PowerSchool Holdings, Inc., PowerSchool Group LLC, and Bain Capital, LP*